UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMBER B. F.,[1] | ) | CIVIL ACTION NO. 4:23-CV-409 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MICHELLE KING,[2] *Acting* | ) | |
| *Commissioner of Social Security*, | ) | |
| Defendant | ) | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Amber F., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Acting Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

[2] Michelle King became the Acting Commissioner of Social Security on January 20, 2025. She is automatically substituted as the defendant, and no further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the Court finds the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On October 23, 2020, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 28).  In these applications, Plaintiff alleged she became disabled on January 1, 2005. (Admin. Tr. 28). At the hearing, Plaintiff amended her alleged onset date to March 31, 2020, when she was 44 years old, due to the following conditions: chronic obstructive pulmonary disease ("COPD"), radiculopathy, spinal stenosis, kidney disease, nerve root compression, degenerative disc disease, sciatica, depression, bulging disks, and hypothyroidism. (Admin. Tr. 28, 362). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, see, complete tasks and concentrate. (Admin. Tr. 383). Plaintiff has a limited education. (Admin. Tr. 44). Before the onset of her impairments, Plaintiff worked as a housekeeper, a fast food worker, and a food expediter. (Admin. Tr. 43).

On April 8, 2021, Plaintiff's applications were denied at the initial level of administrative review. (Admin. Tr. 28). On November 30, 2021, Plaintiff's

applications were denied upon reconsideration. (Admin. Tr. 28). On December 7, 2021, Plaintiff requested an administrative hearing. (Admin. Tr. 28).

On March 31, 2022, Plaintiff, assisted by her counsel, appeared and testified during a telephone hearing before Administrative Law Judge Michelle Wolfe (the "ALJ"). (Admin. Tr. 53-84). On April 13, 2022, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 28-45). On April 18, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 326).

On January 31, 2023, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1).

On March 7, 2023, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the applications are not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the Court find Plaintiff entitled to benefits or remand the case for a further hearing. (Doc. 1, p. 2).

On May 3, 2023, the Commissioner filed an answer. (Doc. 10). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 10). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 11).

Plaintiff's Brief (Doc. 16), the Commissioner's Brief (Doc. 18), and Plaintiff's Reply (Doc. 19 ) have been filed.  This matter is now ready to decide.

## III.    LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.    SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[6] In an adequately developed factual record,

---

[3] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[8]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*,

---

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[9]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[10] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[11]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 &

---

[9] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[10] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[11] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[12]

## B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve [12] months."[13] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[14] To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[15]  Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's

---

[12] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[13] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[14] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[15] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).

eligibility for supplemental security income benefits" under Title XVI of the Social Security Act.[16]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[17] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[18]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[19] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[20]

---

[16] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

[17] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).

[18] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

[19] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[20] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[21]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[22]

## IV.    DISCUSSION

Plaintiff raises the following issues in her statement of errors:

(1)    The RFC determination is not supported by substantial evidence, and the ALJ violated agency regulations by failing to properly articulate her evaluation of the State Agency Medical Consultant's mental opinion.

(2)    The ALJ's Step Four assessment is not supported by substantial evidence because the ALJ did not reconcile the Vocational Expert's testimony with the DOT.

(Doc. 16, p. 4).

---

[21] 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512; 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.
[22] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In her April 2022 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through March 31, 2022. (Admin. Tr. 31). Then, Plaintiff's applications were evaluated at steps one through four of the sequential evaluation process, with the ALJ also making an alternative step five finding.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between March 31, 2020, (Plaintiff's amended alleged onset date) and April 13, 2022, (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 31).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar and cervical spine, chronic bronchitis, chronic obstructive pulmonary disease (COPD), and major depressive disorder. (Admin. Tr. 31).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 31-34).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) except:

> she can frequently balance, occasionally stoop, crouch, crawl, kneel, and climb, but never on ladders, ropes, or scaffolds. She is limited to frequent exposure to temperature extremes of cold and heat, humidity, fumes, odors, dusts, gases, poor ventilation, vibrations, and hazards including moving machinery and unprotected heights. She can do simple, routine tasks, but no complex tasks, in a low stress environment defined as occasional decision making and occasional changes in the work setting. She can have frequent interaction with coworkers, supervisors, and the public.

(Admin. Tr. 35).

At step four, the ALJ found that, during the relevant period, Plaintiff could engage in her past relevant work as a housekeeper. (Admin. Tr. 43-44). The ALJ also made an alternative step five finding that, considering Plaintiff's age, education, work experience, and residual functional capacity, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 44). To support her conclusion, the ALJ relied on testimony given by a vocational expert ("VE") during Plaintiff's administrative hearing and cited the following three (3) representative occupations: marker, DOT # 209.587-034; router, DOT # 222.587-038; and small parts assembler, DOT # 706.684-022. (Admin. Tr. 44).

**B.    WHETHER THE ALJ'S STEP FOUR ASSESSMENT IS SUPPORTED BY SUBSTANTIAL EVIDENCE**

Plaintiff argues that the ALJ's step four finding is not supported by substantial evidence because the ALJ failed to reconcile a conflict between the VE's testimony and the DOT regarding exposure to "fumes, odors, dusts, gases, and poor ventilation." (Doc. 16, pp. 10-12). Specifically, Plaintiff argues,

> At the hearing, the ALJ presented a hypothetical to the vocational expert that limited the Plaintiff to no more than frequent exposure to temperature extremes of cold and heat, humidity, fumes, odors, dusts, gases, poor ventilation, vibrations, and hazards including moving machinery and unprotected heights. T 35. Contemplating these limitations, the VE testified that an individual could perform Plaintiff's past work as a housekeeper, DOT 323.687-014.
>
> . . . .
>
> The job descriptions make clear that an individual performing this job would be much more than frequently exposed to fumes, odors, dusts, gases, and poor ventilation which exceeds the limitations set by the ALJ. This conflict between the vocational expert's testimony and the DOT was not addressed at hearing or after despite the ALJ's requirement to do so.

(Doc. 16, pp. 10-11). Plaintiff asserts that when there is an apparent unresolved conflict between the VE's evidence and the DOT, "the ALJ must elicit a reasonable explanation for the conflict" before relying on the VE evidence in making a disability determination, and then must explain the resolution of the conflict in the decision. (Doc. 16, pp. 11-12).

In response, the Commissioner argues that the DOT description for housekeeper indicates that atmospheric conditions are "Not Present – Activity or condition does not exist." (Doc. 18, p. 15). The Commissioner argues that atmospheric conditions are defined as "exposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation that affect the respiratory system, eyes or the skin," and so there is no apparent conflict between the VE's evidence and the DOT. (Doc. 18, pp. 15-16). The Commissioner also asserts that after arguing that the DOT job descriptions for housekeeper make clear an individual performing that job would be more than frequently exposed to fumes, odors, dusts, gases, and poor ventilation, Plaintiff then asserts that the DOT is silent on the issue. (Doc. 18, pp. 16-17). The Commissioner argues that even if the DOT was silent on the issue, a conflict does not exist where the ALJ relies on the VE's expertise, as the ALJ did in this case. (Doc. 18, p. 17).

Plaintiff replies that the Commissioner "argues that the DOT states atmospheric conditions are not present in this job. However, such a conclusion is logically inconsistent with the job's detailed job description." (Doc. 19, p. 3). Plaintiff argues that "[n]ot only does sweeping, scrubbing, cleaning rugs and carpets, upholstered furniture, and vacuuming necessarily entail encountering dust but the products used to polish and wash also guarantee exposure to fumes." (Doc. 19, p. 3). Plaintiff argues that the Commissioner's assertion that there is no conflict when an

ALJ relies on a VE's expertise concerning specific limitations on which the DOT is silent misstates the ALJ's obligation, and the specific facts in this case merited a reasonable explanation. *Id*. Plaintiff argues that the ALJ's boilerplate recitation of SSR 00-4p is insufficient. *Id*.

Plaintiff's argument hinges on the existence of a conflict between the DOT and the VE's testimony. However, it is apparent from a review of the DOT job description for housekeeper, DOT # 323.687-014, that no such conflict exists. The DOT defines a housekeeper, DOT # 323.687-014, as an individual who:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title.
>
> . . . .
>
> Atmospheric Cond.: Not Present - Activity or condition does not exist.[23]

The DOT defines atmospheric conditions as "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the

---

[23] DOT # 323.687-014, 1991 WL 672783 (cleaner, housekeeper).

respiratory system, eyes, or the skin."[24] The Master Title defines a Cleaner I (any

industry), as an individual who:

> Maintains premises of commercial, institutional, or industrial
> establishments, office buildings, hotels and motels, apartment houses,
> retirement homes, nursing homes, hospitals, schools, or similar
> establishments in clean and orderly condition, performing the following
> duties: Cleans rooms, hallways, lobbies, lounges, rest rooms, corridors,
> elevators, stairways, and locker rooms and other work areas. Sweeps,
> scrubs, waxes, and polishes floors, using brooms and mops and
> powered scrubbing and waxing machines. Cleans rugs, carpets,
> upholstered furniture, and draperies, using vacuum cleaner. Dusts
> furniture and equipment. Polishes metalwork, such as fixtures and
> fittings. Washes walls, ceiling, and woodwork. Washes windows, door
> panels, and sills. Empties wastebaskets, and empties and cleans
> ashtrays. Transports trash and waste to disposal area. Replenishes
> bathroom supplies. Replaces light bulbs. Classifications are made
> according to type of establishment in which work is performed. Typical
> classifications are CLEANER, COMMERCIAL OR
> INSTITUTIONAL (any industry); CLEANER, HOSPITAL (medical
> ser.); CLEANER, HOUSEKEEPING (any industry); CLEANER,
> INDUSTRIAL (any industry); HOUSECLEANER (hotel & rest.).[25]

At the hearing, the ALJ asked the VE whether an individual who has the same

age, education, work history, and residual functional capacity as Plaintiff, including

a limitation to only frequent exposure to fumes, odors, dust, gases, and poor

ventilation, would be able to perform any of Plaintiff's past work as actually

performed or generally performed. (Admin. Tr. 77-78). In response, the VE testified

---

[24] Environmental Conditions, SCODICOT Appendix D.

[25] DOT, Master Title, Cleaner I (any industry) (available at
https://www.dol.gov/agencies/oalj/PUBLIC/DOT/REFERENCES/DOTMAST)
(last accessed Dec. 20, 2024).

that such an individual could perform Plaintiff's past relevant work as a housekeeper, DOT # 323.687-014. (Admin. Tr. 78). Again, "atmospheric conditions" are defined as "[e]xposure to such conditions as fumes, noxious odors, dusts, mists, gases, and poor ventilation, that affect the respiratory system, eyes, or the skin."[26] The job description for DOT # 323.687-014 cleaner, housekeeper, clearly states that "atmospheric conditions" are "not present – activity or condition does not exist."[27] Thus, contrary to Plaintiff's assertion, the VE's testimony that an individual limited to frequent exposure to fumes, odors, dust, gases and poor ventilation would be able to perform the housekeeper job, DOT # 323.687-014, does not present a conflict with the DOT.[28] The ALJ was accordingly not required to elicit

---

[26] Environmental Conditions, SCODICOT Appendix D.

[27] DOT # 323.687-014, 1991 WL 672783 (cleaner, housekeeper).

[28] To the extent Plaintiff asserts that the DOT was silent or unclear on exposure to fumes, noxious odors, dusts, mists, gases, and poor ventilation, review of the DOT job descriptions makes it clear that it is neither silent nor unclear.

further testimony from the VE.[29] Therefore, the ALJ's step four assessment is

supported by substantial evidence.[30]

## C.    WHETHER THE RFC DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff also argues that "the RFC determination is not supported by

substantial evidence, and the ALJ violated agency regulations by failing to properly

---

[29] It appears to the Court that Plaintiff may be trying to argue not that there was a conflict between the DOT and the VE's testimony, but that the DOT's job description stating no such exposure would occur is "ludicrous" and "logically inconsistent" with its own description. (Doc. 19, p. 3). In other words, Plaintiff may be trying to argue that the DOT is incorrect in stating atmospheric conditions are not present for the housekeeper job, and accordingly, the VE's testimony was based on an unreliable job description as listed in the DOT, and so that testimony is not substantial evidence supporting the Commissioner's step four finding. However, Plaintiff does not develop such an argument enough for it to be properly addressed. While Plaintiff asserts that the housekeeper job would require more than frequent exposure to fumes, odors, dust, gases, and poor ventilation, she does not rely upon or cite any authority, or any record evidence in support of this assertion. It may in fact be the case that the DOT's job description stating no such exposure in a housekeeping job would occur is "ludicrous" and "logically inconsistent" with its own description. That does not mean, however, that there was a conflict between what the DOT states and the VE's testimony.

[30] Numerous courts have found that the housekeeper job, DOT # 323.687-014, does not require exposure to atmospheric conditions and that an ALJ's failure to include a limitation on exposure to atmospheric conditions in the RFC is not a harmful error where one of the jobs listed was housekeeper, DOT # 323.687-014. *See Reiche v. Kijakazi*, No. 4:22 CV 427 RHH, 2023 WL 3686362, at *5 (E.D. Mo. May 26, 2023); *Christine Lee S. v. Comm'r of Soc. Sec.*, No. 5:20-CV-1008 (CFH), 2022 WL 103108, at *11 (N.D.N.Y. Jan. 11, 2022); *Pineda v. Berryhill*, No. 18-CV-02901-EMC, 2019 WL 79030, at *3 (N.D. Cal. Jan. 2, 2019); *Branch v. Berryhill*, No. 2:15-CV-2504-EFB, 2017 WL 1063569, at *4-5 (E.D. Cal. Mar. 21, 2017); *Foch v. Colvin*, No. 4:13-CV-92, 2014 WL 3640745, at *10 (E.D. Va. July 22, 2014); *Meyerpeter v. Astrue*, 902 F. Supp. 2d 1219, 1232 (E.D. Mo. 2012).

articulate her evaluation of the State Agency Medical Consultant's mental opinion." (Doc. 16, pp. 4-10). In short, Plaintiff's argument is that Dr. Galdieri, the state agency medical consultant, provided an opinion limiting Plaintiff to one to two step tasks, that the ALJ should have found this limitation persuasive and did not, that the ALJ did not adequately articulate her evaluation of Dr. Galdieri's opinion, and that this error is harmful because a limitation in the RFC to one to two step tasks would preclude the three jobs the ALJ relies on at step five, as they all require a GED reasoning level above 1, which would require the ability to do more than one to two step tasks. *Id.* Even assuming *arguendo* that the ALJ did err in this respect, Plaintiff cannot show harmful error because the housekeeper, DOT # 323.687-014, job has a reasoning level of 1, and, as discussed above, the ALJ's step four analysis is supported by substantial evidence.[31]

---

[31] DOT # 323.687-014, 1991 WL 672783 (cleaner, housekeeper).

## V.    CONCLUSION

For the reasons articulated above, Plaintiff's request that the Court find her entitled to benefits or remand the case for a further hearing will be DENIED as follows:

(1)    The Commissioner's final decision is AFFIRMED.

(2)    Final judgment in the Commissioner's favor will be issued separately.

(3)    An appropriate order will be issued.

Date: January 31, 2025                  BY THE COURT

                                        *s/William I. Arbuckle*
                                        William I. Arbuckle
                                        U.S. Magistrate Judge